AUSA: Jared D. Hoffman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 25 MAG 432

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| v. | Violations of 18 U.S.C. §§ 924(c), 1951, & 2 |
| KENYATTA EPPS, TYREEK MANGUAL, and JOSE RIVERA, | COUNTY OF OFFENSES: NEW YORK |
| Defendants. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

BRIAN McCARTHY, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

1.     On or about January 4, 2025, in the Southern District of New York and elsewhere, KENYATTA EPPS, TYREEK MANGUAL, and JOSE RIVERA, the defendants, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, EPPS, MANGUAL, and RIVERA conspired with others to commit an armed robbery of a bodega owner and a nurse in the vicinity of West 91st Street and Amsterdam Avenue in New York, New York.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
### (Hobbs Act Robbery)

2.     On or about January 4, 2025, in the Southern District of New York and elsewhere, KENYATTA EPPS, TYREEK MANGUAL, and JOSE RIVERA, the defendants, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, EPPS, MANGUAL, and RIVERA committed an armed robbery of a bodega owner and a nurse in the vicinity of West 91st Street and Amsterdam Avenue in New York, New York.

(Title 18, United States Code, Section 1951 and 2.)

## COUNT THREE
### (Firearms Use, Carrying, and Possession)

3.      On or about January 4, 2025, in the Southern District of New York and elsewhere, KENYATTA EPPS, TYREEK MANGUAL, and JOSE RIVERA, the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count Two of this Complaint, knowingly used and carried one or more firearms, and in furtherance of such crime, possessed one or more firearms, and aided and abetted the use, carrying, and possession of one or more firearms, at least one of which was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I am a Detective with the NYPD. I have worked for the NYPD for approximately 21 years, and I have been a Detective for approximately six years. In the course of my work for the NYPD, I have participated in multiple investigations of crimes of violence, including armed robberies. I have been personally involved in the investigation of this matter.

5.      This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The January 4, 2025 Home Invasion

6.      Based on my participation in this investigation, conversations with NYPD officers, and my review of surveillance video and NYPD reports, I have learned, among other things and as more particularly described below, that on or about January 4, 2025, five individuals committed an armed robbery of a husband and wife ("Victim-1" and "Victim-2" respectively, and together, the "Victims") at their apartment in the vicinity of West 91st Street and Amsterdam Avenue in New York, New York (the "Victims' Apartment"). During the armed robbery, the armed robbers stole approximately $200,000 in cash—including proceeds from Victim-1's business running bodegas and delis that sold products from outside New York State—and approximately $60,000 in jewelry. The armed robbers also attempted to steal from Victim-2—who is employed as a nurse—quantities of "lean," which is a slang term referring to syrups and beverages containing controlled substances like promethazine and codeine.

7.      Based on my review of surveillance video captured from residences and storefronts in the vicinity of West 91st Street and Amsterdam Avenue, I have learned, among other things, the following:

a.     At approximately 9:40 p.m., a black Dodge minivan (the "Dodge Minivan") parked outside the building of the Victims' Apartment (the "Victims' Building"). Victim-1 was smoking outside of the Victims' Building when four males jumped out of the Dodge Minivan, brandished firearms at Victim-1, and forced him inside the Victims' Building at gunpoint. Once inside the Victims' Building, the robbers brandished firearms at Victim-1 and forced their way inside the Victims' Apartment:



b.     Once inside the Victims' Apartment, the robbers asked Victim-1 where money was located. The robbers then tied up Victim-1 and Victim-2, and stole approximately $200,000 in cash, which included proceeds from Victim-1's business running bodegas and delis that sell products from outside New York State, and approximately $60,000 in jewelry, including a digital "smart" watch, the location of which could be tracked using a cellphone application. The robbers also asked Victim-2, who is a nurse, where the "lean" was located. Based on my training, experience, and through other investigations, I have learned that "lean" is a slang term for a drink often consumed recreationally, which includes prescription cough syrup containing codeine and promethazine. In the still image below, one of the robbers is seen brandishing a firearm at Victim-2, and he is wearing green gloves, loose black pants, black sneakers with distinctive white details, and white socks:



c.     The armed robbery lasted for approximately 25 minutes, between approximately 9:40 p.m. and approximately 10:15 p.m. At approximately 10:15 p.m., the robbers left the Victims' Apartment, and then the Victims' Building. Once outside, three of the robbers fled in the Dodge Minivan, while two other individuals fled in a black Mercedes Sedan (the "Mercedes Sedan"). As depicted in the image below left, as one of the armed robbers exited the

Victims' Building, surveillance video captured him wearing a black sweatshirt with white lettering that read "AP." He was also wearing a black backpack and carrying multiple bags in his hand:



8.      In the Victims' Apartment, Victim-1 found on the floor a loaded magazine to a gun, which the robbers had dropped. An NYPD Evidence Collection Team reported to the scene and processed the magazine.

### Identification of the Defendants

9.      Shortly after the armed robbery described above, Victim-1 used his cellphone to track the location of his smart watch and shared that information with law enforcement, who traced the watch to the vicinity of West 91st Street in New York, New York. Upon arriving, investigators identified the Dodge Minivan parked in the area and noted that it appeared to match the van that the robbers exited prior to the armed robbery and reentered afterwards.

10.     Security camera footage from the vicinity on West 91st Street where the Dodge Minivan was located showed that at or about 10:30 p.m.—shortly after the armed robbery—the Dodge Minivan pulled up to a certain apartment building on West 91st Street (the "Post-Robbery Building"), and three men with appearances and clothing consistent with the robbers got out of the Dodge Minivan carrying duffle bags and other items. At the same time, two other individuals also exited the Mercedes Sedan and went with the occupants of the Dodge Minivan into the Post-Robbery Building, where they took the elevator to the tenth floor, and entered a certain apartment (the "Post-Robbery Apartment") while carrying multiple bags and backpacks. Depicted below are images of the Dodge Minivan (left) and the Mercedes Sedan (right) outside the Post-Robbery Building, moments before the individuals entered the Post-Robbery Building and entered the Post-Robbery Apartment:

 

*Jose Rivera*

11.     I was able to determine the apartment number of the Post-Robbery Apartment that the five individuals entered and searched a law enforcement database maintained by the NYPD for any information about the apartment. Based on my review of the records returned from the law enforcement database, I learned that an individual named "JOSE RIVERA" resided in the Post-Robbery Apartment.

12.     NYPD Officers collected surveillance video both outside the Post-Robbery Building and in the hallway leading to the Post-Robbery Apartment. Based on my review of that surveillance video, I am aware of the following:

        a.     On January 4, 2025, at approximately 5:27 p.m.—approximately four hours prior to the armed robbery of the Victims' Apartment—a male individual, later identified as JOSE RIVERA, the defendant, left the Post-Robbery Apartment. RIVERA left the Post-Robbery Apartment wearing a dark-colored hooded sweatshirt, a black hooded jacket, baggy black sweatpants, black sneakers with distinctive white details, and he was carrying a black backpack with royal blue straps and lining:

 

        b.     RIVERA then exited the Post-Robbery Building and entered the Mercedes Sedan. As part of this investigation, NYPD officers were able to obtain the license plate of the Mercedes Sedan, and confirmed that the Mercedes Sedan in which RIVERA entered prior to the armed robbery was the same one that drove away from the Victims' Apartment after the armed robbery, and the same one that dropped off the group of robbers at the Post-Robbery Building after the armed robbery.

        c.     Following the armed robbery, at approximately 10:35 p.m., after the Dodge Minivan and Mercedes Sedan dropped off the five individuals at the Post-Robbery Apartment, surveillance video captured the five individuals in the lobby of the Post-Robbery Building and in the hallway leading to the Post-Robbery Apartment. One of the individuals, later identified as

JOSE RIVERA, the defendant, wore loose black pants, black sneakers with distinctive white details, and white socks.

 

      d.    Based on a comparison between the black sweatpants and black sneakers worn by the individual who left the Post-Robbery Apartment associated with JOSE RIVERA (below left), the black sweatpants, black sneakers, and white socks worn by one of the armed robbers during the gunpoint robbery (below center), and the black sweatpants, black sneakers, and white socks worn by the individual walking into the Post-Robbery Apartment following the armed robbery (below right), I believe the three images depict the same individual, JOSE RIVERA, the defendant:

  

13.    Moreover, as part of this investigation, NYPD officers searched a law enforcement database maintained by the NYPD for any information about "JOSE RIVERA." Based on that search, NYPD officers discovered that in or around December 2024, an individual named "JOSE RIVERA" called the NYPD to report a stolen motorcycle, and NYPD reported to the same address as the Post-Robbery Building. Based on my review of the body-worn camera from that incident, I am aware that the individual depicted in the below image left identified himself to the NYPD as "JOSE RIVERA." Based on my comparison of JOSE RIVERA from the December 2024 BWC (below left), one of the individuals in the Post-Robbery Building after armed robbery (below middle), and from a photograph of RIVERA from his criminal history report that I obtained, I believe that JOSE RIVERA participated in the gunpoint robbery:

  

*Kenyatta Epps*

14.     Based on my additional review of the surveillance video both outside the Post-Robbery Building and in the hallway leading to the Post-Robbery Apartment, I am aware of the following:

a.     On January 4, 2025, at approximately 10:56 p.m., one of the five individuals, later identified as KENYATTA EPPS, the defendant, left the Post-Robbery Apartment. EPPS wore a sweatshirt with white lettering that partially read "AP," consistent with the clothing worn by one of the armed robbers. *See* ¶ 7(c). EPPS was also holding a black duffle bag in his hand:



b.     At approximately 11:17 p.m., EPPS left the Post-Robbery Building and walked to another apartment building in the vicinity of West 90th Street in New York, New York. As EPPS left the Post-Robbery Building and arrived at the second building, surveillance video captured him carrying duffle bags, a black Nike backpack, and wearing a black sweatshirt that read, "BAPE," consistent with the clothing worn by one of the armed robbers. *See* ¶ 7(c).

 

      c.      At approximately 12:01 a.m., EPPS exited the second apartment building and proceeded to a third apartment building in the vicinity of West 91st Street (the "Epps Building"). When EPPS traveled from the second apartment to the third apartment, he had changed clothes, but he was still carrying the black Nike backpack and the black duffle bags:

 

      d.      Once EPPS arrived at the Epps Building, he entered an apartment on the thirteenth floor, and then proceeded to an apartment on the eighth floor (the "Eighth Floor Apartment"). When EPPS entered the Eighth Floor Apartment, he was still carrying the black Nike backpack and the black duffle bags. At approximately 12:18 a.m., EPPS exited the Eighth Floor Apartment, proceeded down to the second floor, and met with an unknown male in the staircase. At that time, EPPS was no longer holding the black Nike backpack or the black duffle bags.

      e.      I was able to determine the apartment number of the Eighth Floor Apartment and searched a law enforcement database maintained by the NYPD for any information about the apartment. Based on my review of the records returned from the law enforcement database, I learned that an individual named "KENYATTA EPPS" resided in the Eighth Floor Apartment from EPPS's criminal history report.

      f.      I compared an image I obtained from EPPS's criminal history report (left) to the individual dressed in pink and found that both have a distinctive tattoo on their left hand that reads, "823." For that reason, I determined that the individual dressed in pink was KENYATTA EPPS, the defendant:

  

15.      After learning that an individual named KENYATTA EPPS, the defendant, was associated with the Eighth Floor Apartment, I obtained surveillance video from the Epps Building. Based on my review of that surveillance video, I am aware of the following:

a.      On or about January 4, 2025, at approximately 4:38 p.m.—approximately five hours before the armed robbery—an individual later identified as KENYATTA EPPS, the defendant, left the Eighth Floor Apartment. As depicted in the still images below, when EPPS left the Eighth Floor Apartment, he was wearing a black hooded sweatshirt with distinctive white lettering that read "BAPE," black sweatpants, and black sneakers. Epps exited the Eighth Floor Apartment (below left), walked down the building's staircase to the second floor (below right), and entered one of the apartments on the second floor, where he stayed for approximately an hour.

 

b.      At approximately 5:38 p.m., moments after RIVERA had entered the Mercedes Sedan, surveillance video captured EPPS exiting the apartment on the second floor, exiting the Epps Building, and entering the Mercedes Sedan. When EPPS exited the apartment on the second floor, he was still wearing the "BAPE" sweatshirt. Accordingly, I believe the armed robber wearing the "BAPE" sweatshirt upon leaving the Victims' Apartment was KENYATTA EPPS, the defendant.

*Tyreek Mangual*

16.     Based on my additional review of the surveillance video both outside the Post-Robbery Building and in the hallway leading to the Post-Robbery Apartment, I am aware of the following:

a.      Following the armed robbery, at approximately 10:35 p.m., after the Dodge Minivan and Mercedes Sedan dropped off the five individuals at the Post-Robbery Apartment, surveillance video captured the five individuals in the lobby of the Post-Robbery Building and in the hallway leading to the Post-Robbery Apartment. One of the individuals, later identified as TYREEK MANGUAL, the defendant, wore a puffy black jacket, a black beanie hat, distinctive black and white sneakers, and had a beard:

 

17.    As part of this investigation, I reviewed records from the Department of Motor Vehicle records, and I learned that the registered owner of the Mercedes Sedan is TYREEK MANGUAL, the defendant.

18.    NYPD officers searched a law enforcement database maintained by the NYPD for any information about "TYREEK MANGUAL." Based on that search, NYPD officers discovered that in or around December 2024, an individual named "TYREEK MANGUAL" was pulled over for a traffic stop while driving the Mercedes Sedan. Based on my review of the body-worn camera from that incident, I am aware that the individual depicted in the below image left identified himself to the NYPD as "TYREEK MANGUAL." Based on my comparison of TYREEK MANGUAL from the December 2024 BWC (below left) and one of the individuals who entered the Post-Robbery Apartment after the armed robbery (below middle), I believe that TYREEK MANGUAL was the driver of the Mercedes Sedan during the armed robbery:



WHEREFORE, I respectfully request that warrants be issued for the arrest of KENYATTA EPPS, TYREEK MANGUAL, and JOSE RIVERA, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

s/Brian McCarthy /otw
Brian McCarthy, Detective
New York City Police Department

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this  6th    day of February, 2025.

THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York